McDONALD, J.,
concurring and dissenting, in which ADKINS, J., joins.
The Majority opinion holds that a borrower’s right to rescind a loan transaction under the federal Truth in Lending Act does not extend to a transaction that has yet to occur. I have no quarrel with that legal proposition, but it is not at all clear that it applies to this case. The Majority opinion essentially engages in its own fact-finding in an effort to apply that holding and to resolve this case. But that is not our role. I would remand this matter to the Circuit Court for further factual development in the appropriate forum.
The Majority opinion makes heroic efforts, largely in footnotes,[1] to construct a factual basis for its decision. But, as the Majority opinion recognizes, the current record of this case is quite murky with respect to the sequence of events involving Mr. Capps, the mortgage broker, and the lender. The Majority opinion attributes this state of the record solely to Mr. Capps. Majority op. at pp. 334-35 & n. 5, 102 A.3d at 357-58 & n. 5. However, while Mr. Capps provided a sworn affidavit and e-mails between the loan broker and lender[2] on the *354 question of rescission in the Circuit Court, the substitute trustees never disputed the timeliness of the rescission notice in the Circuit Court and, perhaps for that reason, did nothing themselves to clarify the record on the relevant time line.[3] Nonetheless, the Majority opinion faults Mr. Capps alone for failing to clarify the time line of the loan transaction and rescission.
In the Circuit Court, the substitute trustees relied on a host of other legal arguments, but not the one on which the Majority opinion decides this case. Indeed, the substitute trustees did not suggest that Mr. Capps’ rescission of the transaction was premature until this case reached the Court of Special Appeals. In its unreported opinion, the intermediate appellate court held that a rescission notice is effective under the Truth in Lending Act, even if it is sent before the consummation of a transaction. Thus, resolution of the time line in Mr. Capps’ case was not essential to that court’s decision. That court apparently accepted the substitute trustees’ belated assertion that the rescission notice pre-dated the transaction and held that, under its view of the rescission right, that timing did not matter.
In this Court, the substitute trustees challenge the timeliness of the rescission notice based on typewritten and handwritten dates that appear on various documents, although they offered no evidence in the Circuit Court as to the accuracy of any particular date. The Majority appears to accept the idea that the typewritten and handwritten dates on various documents may not be the dates on which the particular documents *355 were actually executed. Majority op. at pp. 335-36 nn. 7, 9, 102 A.3d at 358 nn. 7, 9. Nevertheless, it generally draws inferences in favor of the substitute trustees and against Mr. Capps as to the accuracy of particular dates.
In the oral argument before us, the substitute trustees conceded that a borrower receives the form to rescind a loan only at the closing—a fact that suggests that the borrower (Mr. Capps) could only have submitted the rescission form— however the documents may have been dated or mis-dated— after the closing. The Majority opinion dismisses this information as to when a borrower receives a rescission form in relation to a closing as “not material” to the question of when this borrower would have been able to submit the rescission form related to the loan transaction in this case. Majority op. at p. 336 n. 9, 102 A.3d at 358 n. 9. But the Majority opinion can only speculate as to how Mr. Capps would have come into possession of the rescission form prior to the closing.
Mr. Capps asserted in the Circuit Court that he had rescinded the transaction in a timely manner, but that the lender had told him—incorrectly—that the rescission was ineffective, that he was bound by the promissory note he had signed, and that he was obligated to accept the funds and make payments. It is not inconceivable that a mortgage broker or a lender, who stands to lose a substantial fee if a transaction does not go forward, would discourage a borrower from rescinding a transaction.[4] The Majority opinion discounts Mr. Capps’ affidavit, although it is unrebutted in this record, and faults Mr. Capps for not elaborating on the circumstances of the rescission by filing an additional affidavit. Majority op. at pp. 334-35 n. 5, 102 A.3d at 357-58 n. 5. The substitute trustees introduced no evidence—in the form of sworn affidavits or otherwise—on this issue in the Circuit Court.
As the Majority opinion notes, at the hearing on exceptions in the Circuit Court, the judge summarized the history of the *356 case as to the rescission issue—without any contradiction or objection by counsel for the substitute trustees—as follows:
... the allegations [in a third party complaint against the lender] were that Mr. Capps had rescinded. Apparently, there’s no dispute about that. [T]hat he signed the note, and then rescinded within the period of time—he was given proper notice for a rescission, within the period of time, ... he did rescind.
[Apparently there’s little dispute about the fact that, ... when he spoke to the lender he was told he couldn’t ... rescind and he then began making payments on the loan, which apparently he made until he lost his job.
Record Excerpts at 109-10. The Majority opinion dismisses the trial judge’s statement as the result of “confusion.” Majority op. at pp. 334-35 n. 5, 102 A.3d at 357-58 n. 5.
At times, it appears that it is the Majority opinion that is confused or that simply disregards parts of the record. For example, the Majority opinion relies heavily on the undisputed facts that Mr. Capps accepted the proceeds of the loan and made payments on it until he lost his job. Majority op. at pp. 333-34 n. 4, 340-41, 349 n. 21, 102 A.3d at 356-57 n. 4, 361, 366 n. 21.[5] While it notes that Mr. Capps recounted in his affidavit that he did so because the lender had told him that his rescission was ineffective and that the mortgage would remain in effect, it gives no weight to that undisputed fact,[6] stating that “Capps did not identify which Equifirst employee made such statements, nor did he substantiate from any other source that the conversation occurred.” Majority op. at p. 337, 102 A.3d at 359 (emphasis added). Apparently, the Majority opinion would prefer to have more evidence on the *357 circumstances of this conversation, as might a fact-finder at trial. But the substitute trustees never challenged Mr. Capps’ statement that this conversation occurred.
The Majority opinion disregards Mr. Capps’ factual allegations by noting that the order granting a writ of certiorari did not address fraud. This is not surprising, as the Court of Special Appeals did not rely on the allegedly fraudulent statements by the lender in issuing its decision and remanding the case to the Circuit Court.[7] The Majority opinion does not explain why Mr. Capps should have filed a conditional petition for certiorari on an issue that was not decided against him in the intermediate appellate court and that would remain part of the case on remand to the Circuit Court. In any event, we should not disregard sworn factual information in the record simply to make the remaining facts fit our disposition of the case.
In sum, in concluding that Mr. Capps’ rescission was premature, the Majority is making a decision that is premature. Now that the question of the timing of the rescission has been raised, further proceedings in the Circuit Court would clarify what documents were post-dated or pre-dated, whether Mr. Capps was purposely vague or the substitute trustees were purposely silent, and whether there is other evidence of when *358 the closing took place in relation to the rescission notice. It may be that the Majority’s speculation as to the facts of this case would ultimately prove accurate and that Mr. Capps’ rescission notice would be held ineffective or that the lender had not misled him and he had waived the rescission. But the trial court is the appropriate forum for determining the dis-positive facts. Pursuant to Maryland Rule 8-604(d),[8] I would remand without affirming or reversing for further factual development.
Judge ADKINS has advised that she joins this opinion.

. Majority op. at pp. 334-35 n. 5, pp. 336-37 nn. 9-10, 102 A.3d at 357-58 n. 5, 358 nn. 9-10.

. Those e-mails documented that the loan broker and lender received the rescission notice. While the representative of the loan broker expressed disappointment that the transaction had fallen through (“what a waist” [sic]), none of the parties in the e-mail string suggests that the rescission was premature. The Majority opinion puts its own *354 gloss on these e-mails, asserting that because some of the e-mails are dated on the morning of April 17, there was "plenty of time for Capps to sign the loan documents later in the day.” Majority op. at p. 337 n. 10, 102 A.3d at 358 n. 10. Whether some unknown event occurred on April 17 that resulted in a transaction taking place subsequent to the emails—contrary to Mr. Capps’ assertion—is pure speculation by the Majority opinion. The substitute trustees offered no evidence in the Circuit Court on that point.

. In opposing Mr. Capps' exceptions to the foreclosure sale in the Circuit Court, the substitute trustees themselves did not argue that the rescission notice was premature. Record Excerpts at 82-91.

. The record discloses that, in Mr. Capps' transaction, the loan broker and lender received fees totaling more than $13,000 upon closing of the transaction. Record Excerpts at 41.

. These are two of the six facts it deems material to the disposition of this case. Majority op. at pp. 333-34 n. 4, 102 A.3d at 356-57 n. 4.

. Indeed, in arguing that Mr. Capps waived his right of rescission, Majority op. at p. 349 n. 21, 102 A.3d at 366 n. 21, the Majority either ignores these facts or is very forgiving as to the lender's alleged *357 misconduct, which would constitute a violation of the Truth in Lending Act.

. The record before us reveals that Mr. Capps has consistently asserted that he went through with the loan and made payments because he was told by the lender that he could not rescind the loan. This allegation of fraud on the part of the lender, supported by a sworn affidavit and never rebutted by the substitute trustees, was part of his initial motion to stay and dismiss the foreclosure action and was reiterated in the post-sale exceptions and considered by the Circuit Court. Although that court alluded to the possibility of a fraud exception to the limitations of Rule 14-305, see Bates v. Cohn, 417 Md. 309, 324 n. 10, 9 A.3d 846 (2010), it ultimately did not address the effect of the rescission or the lender’s alleged statement, as the court held that the issue did not concern “the validity or irregularity of the [foreclosure] sale.” See Record Excerpts at 43, 78, 111-12. Thus, the Circuit Court did not make any fact findings as to whether the alleged statements were made or whether Mr. Capps accepted the loan and made payments in reliance on those statements. In ruling in Mr. Capps’ favor, the Court of Special Appeals did not address the fraud question and remanded the case for a determination whether Mr. Capps had in fact rescinded the transaction.

. That rule provides, in pertinent part, that "[i]f the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand the case to a lower court....”